1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELMER DOSIO, JR., <br><br> Plaintiff, <br><br> vs. <br><br> N. ODELUGA, et al., <br><br> Defendants. | **1:19-cv-00675-DAD-GSA-PC** <br><br> **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST BE DENIED (ECF No. 35.)** <br><br> **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.    BACKGROUND

Elmer Dosio, Jr. ("Plaintiff") is a state prisoner proceeding *in forma pauperis* with counsel in this civil rights action under 42 U.S.C. § 1983. This case now proceeds with Plaintiff's Second Amended Complaint against defendant Licensed Vocational Nurse ("LVN") Elma Fernandez[1] ("Defendant") for failure to provide adequate medical care in violation of the Eighth Amendment. (ECF No. 18.)[2]

---

[1] Sued as E. Frandez.

[2] On April 29, 2021, the court issued an order dismissing all other claims and defendants from this case based on Plaintiff's failure to state a claim. (ECF No. 20.)

1

On December 14, 2021, Defendant filed a motion for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies for his allegations against her before filing suit. (ECF No. 35.)  On December 30, 2021, Plaintiff filed an opposition to the motion. (ECF No. 38.)  On January 2, 2022, Defendand filed a reply to the opposition.  (ECF No. 42.)

Defendant's motion for summary judgment was submitted upon the record on January 21, 2022, without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow the court finds that Defendant's motion for summary judgment should be denied.

## II.     PLAINTIFF'S ALLEGATIONS[3]

The events at issue in the Second Amended Complaint allegedly took place at North Kern State Prison (NKSP) in Delano, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).  The sole Defendant in this case is Elma Fernandez.

A summary of Plaintiff's allegations follows:

The gravamen of Plaintiff's Second Amended Complaint is that he was not provided with adequate medical care resulting in blindness in his right eye.  Plaintiff alleges that he experienced pain in his right eye from June 2016 through October 2016, at which time he lost his sight in that eye.

On June 22, 2016, Plaintiff submitted a CDCR form 7362 Healthcare Services Request stating that he had been experiencing pain and blurriness in his eye.  On June 22, 2016, Plaintiff's right eye was:  sphere -125 cylinder -05, vision 20/20; and his left eye was: sphere -50 cylinder 0.75, vision 20/20.

Documentation shows that after a face-to-face triage on or about June 24, 2016, Plaintiff was referred to an eye specialist.  On June 30, 2016, Plaintiff was diagnosed with inflammation

---

[3] Plaintiff's Second Amended Complaint, (ECF No. 18), is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

in his right eye.  Dr. O. Beregovskaya [not a defendant], Internal Medicine, made the diagnosis. From June 30, 2016 through October 2016, Plaintiff received medication for pain and several injections in his right eye to treat the blurriness.  Dr. D. Gines [not a defendant] ordered the medication.

On October 26, 2016, Plaintiff received his fourth injection in his right eye.  Dr. Tawansey [not a defendant] supervised all of the outside medical visits and examinations.  On October 27, 2016, Plaintiff developed an infection in his right eye with pain, blurry vision, and pus oozing out of his eye.  Plaintiff went to the facility clinic seeking medical attention and relief from the pain in his eye and advised defendant LVN Fernandez, who was on staff at that time, of his symptoms and pain.  Defendant Fernandez ignored Plaintiff's obvious signs of distress and urgent need of medical treatment, when it was medically obvious that immediate and adequate care was needed to mitigate Plaintiff's prolonged suffering.  Defendant Fernandez advised Plaintiff that there was nothing she could do and that it didn't look like anything was wrong with his eye.

On October 28, 2016, with symptoms having worsened, Plaintiff again returned to the facility clinic where Defendant Fernandez was on staff and once more advised Defendant Fernandez of pus leaking from his right eye, with a high level of pain.  Defendant Fernandez again told Plaintiff that there was nothing she could do as the doctors were aware of his situation and would be back in a day or so.  Defendant Fernandez refused to entertain the idea that she had the ability to send Plaintiff to the Treatment Triage Annex (TTA) to be examined by a staff physician or a concerned RN familiar with his current treatment.   Defendant Fernandez did not contact anyone, or make any effort to alleviate the signs of distress that Plaintiff was showing that day and had been receiving treatment for since June 2016.

On October 29, 2016, Plaintiff submitted another 7362 Request for Healthcare Services advising of a complete loss of sight and an increased level of pain since the October 26, 2016 injection in his eye.   On October 29, 2016, Plaintiff again attempted to get help for the pain and pus in his right eye, but Defendant Fernandez indifferently told Plaintiff again that there was nothing she could do because the supervisors were all aware of his eye problem, and that Plaintiff

should leave.  At none of the many interactions that Defendant Fernandez had with Plaintiff did she attempt to actually give Plaintiff any constitutionally adequate medical attention other than telling Plaintiff that his eye looked fine to her.  Defendant Fernandez did not take triage notes or notify Plaintiff's treating physicians or supervisory staff familiar with the several outpatient visits and eye treatments Plaintiff had been undergoing since June 2016.

On October 29, 2016, at about 1930 hours, Plaintiff walked into the facility clinic complaining of pain level 10/10 and complete loss of vision in his right eye, which LVN Tomay [not a defendant] observed and immediately called TTA RN Albano [not a defendant] about the seriousness of the situation.  RN Albano [arranged] for the Plaintiff to be sent to TTA.  Plaintiff was escorted by a prison guard at the request of Albano.  At about 2100 hours, Plaintiff was examined by Dr. Alphonso [not a defendant] who was on call that shift, who stated that Plaintiff had a loss of vision in his right eye as a possible result of an Avastain injection that Plaintiff had received on October 26, 2016.  Dr. Alphonso further documented that Plaintiff's right eye pupil was small, had a sluggish reaction to light, and had a lens that was white.  Dr. Alphonso ordered an ambulance to take Plaintiff to San Joaquin Community Hospital ASAP.  Plaintiff was admitted to the receiving hospital overnight where he was seen by his treating physician Dr. K. Tawansey [not a defendant] who gave Plaintiff at least four more injections in an attempt to save Plaintiff's right eye.

From October 27, 2016, through October 29, 2016, Plaintiff made several attempts to seek medical attention and treatment that would have saved his eyesight in his right eye, including Healthcare Services Requests and personally advising medical staff, Defendant LVN Fernandez, that he had an urgent medical concern.  Plaintiff has shown that his medical needs were sufficiently serious to require more than a dismissive acknowledgement or telling him it looked fine when it could not, by any objective observer, be shown to look fine with pus oozing out and a white lens, which failure to treat has resulted in further significant injury and the wanton and unnecessary infliction of pain.  Plaintiff's delay in adequate medical treatment by Defendant LVN Fernandez directly resulted in the loss of vision in Plaintiff's right eye, which may have been avoided had the Defendant not shown deliberate indifference to Plaintiff's obvious medical

need.

On November 1, 2016, Plaintiff had surgery on his right eye which proved unsuccessful. Dr. Tawansey advised Plaintiff that he would never be able to see out of his right eye again or focus.  After the surgery on Plaintiff's right eye, x-rays showed that Plaintiff's eye was completely black.

Plaintiff was under the impression that the treatment and therapy that he had been receiving would restore his eye to some form of functionality, but for the deliberate indifference of the Defendant Fernandez.  Defendant's failure to take any corrective action is a violation of Plaintiff's Eighth Amendment rights.  Defendant's actions did not advance any penological goal, nor were the actions narrowly tailored to achieve such a goal.

## III.   SUMMARY JUDGMENT BASED ON EXHAUSTION

### A.   Legal Standards

#### 1.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself."  Bock, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison

system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90. However, the Ninth Circuit has made clear: A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. Id.

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Bock, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id; Arpaio, 557 F.3d at 1120; see also Bock, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case, the grievance process used at North Kern State Prison where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino v. Baca (Albino II), 747 F.3d 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access

*///*

to the necessary grievance forms to timely file his grievance).  In such a case, "the inmate cannot pursue the necessary sequence of appeals." <u>Sapp</u>, 623 F.3d at 823.

## 2.  <u>California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System</u>

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3999.226(a) (2018).  <u>See</u> <u>Munoz v. Cal. Dep't of Corr.</u>, No. CV 18-12064-CJC (KS), 2020 WL 5199517, at 19-20 (C.D. Cal. July 24, 2020) (describing the two-step process).

First, the inmate must submit their grievance on the proper form and describe the specific complaint that has had a material adverse effect on their health or welfare. <u>See</u> Cal. Code Regs. tit. 15, § 3999.227(a). <u>Munoz</u>, 2020 WL 5199517, at 19. The grievant must submit the form to the "HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of: (1) the action or decision being grieved, or (2) initial knowledge of the action or decision being grieved." Cal. Code Regs. tit. 15, § 3999.227(b). Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition . . . to HCCAB [Health Care Correspondence and Appeals Branch] . . . within 30 calendar days[.]" Id. § 3999.229(a); <u>Munoz</u>, 2020 WL 5199517, at 20.

The HCGO and the HCCAB have discretion to accept grievances filed outside the 30 day time limit if it is determined that the grievance merits further review "for reasons including, but not limited to: (1) Good cause exists for untimely submission of the health care grievance[,]" or (2) "Issues stated in the health care grievance allege facts that warrant further inquiry." Cal. Code Regs. tit. 15, § 3999.228(d) (HCGO), § 3999.230(d) (HCCAB). If prison officials accept and render a decision on the merits of a grievance, despite a potential procedural flaw, at each available step of the administrative process, then the PLRA requirement of administrative exhaustion is satisfied. <u>See</u> <u>Reyes v. Smith</u>, 810 F.3d 654, 657-58 (9th Cir. 2016) ("Where prison

officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state . . . and defendants cannot rely on the failure to exhaust defense." (quoting Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011)); Wilson v. Zubiate, 718 Fed. Appx 479, 481-82 (9th Cir. 2017). A decision on the merits must discuss the substance of the grievance. See Wilson, 718 Fed. Appx at 481-82; Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 501-02 (2001) ("The original connotation of an 'on the merits' adjudication is one that actually 'pass[es] directly on the substance of [a particular] claim' before the court." (quoting Restatement (Second) of Judgments § 19, comment a, at 161 (1980)).

### 3.     Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Bock, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino II, 747 F.3d at 1168–69. Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56. Id. If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). Bock, 549 U.S. at 223–24; Lira, 427 F.3d at 1175–76.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

---

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino II, 747 F.3d at 1162.

other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party."  Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  The court must liberally construe Plaintiff's filings because he is a *pro se* prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino II, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  The ultimate burden of proof remains with defendants, however.  Id.  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id. at 1166.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### B.   Parties' Undisputed Facts [5]

---

[5]   These facts are taken from Defendants' Separate Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment filed on December 14, 2021.  (ECF No. 35-3.) On December 30, 2021,  Plaintiff submitted a response to Defendants' Statement of Undisputed Facts, (ECF No. 38-1), and a Statement of Disputed Facts, (ECF No. 38-2).  The court has considered all declarations and exhibits submitted in support of each statement. Unless otherwise indicated, disputed, duplicative, and immaterial facts are omitted from this statement and relevant objections are overruled.

In accordance with Local Rule 260(a), on December 14, 2021, Defendant submitted the following Statement of Undisputed Facts with references to the supporting evidence. (ECF No. 35-3.) On December 30, 2021, Plaintiff submitted the following Responses to Defendants' Statement of Undisputed Material Facts. (ECF No. 38-1.) Unless otherwise noted, the following facts are undisputed by the parties or as determined by the court based on a thorough review of the record.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| **BACKGROUND**<br><br>1. At all relevant times, Plaintiff Elmer Dosio (V-75308) was a state prisoner in the lawful custody of California Department of Corrections and Rehabilitation (CDCR) and was housed at North Kern State Prison (NKSP) in Delano, California. (Second Amended Complaint (SAC) at 1, ECF No. 18.) | Admitted. |
| 2. At all relevant times, Defendant Fernandez worked as a Licensed Vocational Nurse at NKSP. (SAC at 2.) | Admitted. |
| 3. On May 16, 2019, Dosio filed a complaint under 42 U.S.C. § 1983 in the United States District Court, Eastern District of California, alleging that numerous medical staff at NKSP, including Defendant Fernandez, violated his Eighth Amendment rights by ignoring his | Admitted. |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| urgent need for medical treatment, resulting in pain and suffering between "2016 until the present." (Complaint at 7, ECF No. 1.) | |
| 4. That complaint was dismissed with leave to amend. (ECF No. 10.) | Admitted. |
| 5. After two additional attempts to amend the complaint, the Court screened the complaint and permitted an Eighth Amendment deliberate indifference claim to proceed against Defendant Fernandez. (Screening Order on SAC, ECF No. 20.) | Admitted. |
| 6. In his Second Amended Complaint, Plaintiff alleges that Defendant Fernandez, "arbitrarily, capriciously and with deliberate indifference denied Plaintiff Constitutionally mandated medical treatment by sending Plaintiff to an outside hospital or contact a doctor on staff to take corrective action at any point from October 27, 2016, through October 29, 2016." (SAC at 7.) | Admitted. |
| 7. Specifically, his one and only cause of action is against Fernandez for "respond[ing] to Plaintiff's many complaints from October 27, 2016, through October 29, 2016, concerning the pain and suffering he was experiencing with deliberate indifference . . ." | Admitted. |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| (SAC at 10.) | |
| **HEALTH CARE ADMINISTRATIVE APPEALS PROCESS**<br><br>8. Since August 1, 2008, health care appeals/grievances involving inmate medical, dental, and mental health care issues have been processed by California Correctional Health Care Services (CCHCS), under the Office of the Federal Receiver appointed in the class action litigation regarding prison health care, Plata v. Newsom, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351. The Health Care Correspondence and Appeals Branch (HCCAB) receives, reviews, and maintains all health care appeals/grievances accepted for the final (headquarters) level of review in the inmate health care appeal/grievance process, and renders decisions on such appeals/grievances. (Declaration of R. Hart (Hart Decl.) at ¶ 3.) | Admitted. |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 9. All CDCR institutions, including NKSP, have an administrative grievance process for grieving healthcare issues that affect inmates. The first level is at the institutional level and the second and final level is at headquarters level. (Id. at ¶ 4.) | Admitted. |
| 10. All levels of health care appeals/grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS). HCARTS also tracks health care appeals/grievances that were received and ultimately rejected and the reason for the rejection. HCARTS is kept as a regularly-conducted activity, and the computer entries are made at or near the time of the occurrence by the employee who is processing the appeal/grievance. (Id. at ¶ 5.) | Admitted. |
| 11. Title 15 of the California Code of Regulations governs the inmate appeal/grievance process. Before September 1, 2017, health care appeals/grievances were governed by sections 3084 - 3086 of Title 15 of the California Code of Regulations, which govern the inmate appeal process. Under that | Admitted. |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| process, health care appeals were subject to three levels of review before administrative remedies were deemed exhausted. Cal. Code Regs. tit. 15, § 3084.7(d)(3) (2016). Exceptions to this process are set forth in section 3084.9 of Title 15. (Id. at ¶ 7.) | |
| 12. New procedures were officially enacted as regulations under Cal. Code Regs. tit. 15, § 3087 on September 1, 2017; however, in 2019, the health care grievances section was changed without regulatory effect and can now be found at Title 15, §§ 3999.225 – 3999.237 of the California Code of Regulations. Under these regulations, inmates may grieve complaints regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC form. Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a) (2019). Such complaints are subject to two levels of review, an institutional level of review, and a headquarters level of review. Cal. Code Regs. tit. 15, § 3999.226(a)(1) (2019). Health care grievances are subject to a headquarters' disposition before administrative remedies are deemed exhausted. Cal. Code Regs. tit. 15, § | Admitted. |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| 3999.226(g) (2019). (Id. at ¶ 8.) | |
| 13. Under California Code of Regulation § 3999.227(b) the grievant must complete Section A of the CDCR 602-HC and submit it within 30 calendar days of: 1) the action or decision being grieved, or; 2) initial knowledge of the action or decision being grieved. (Id. at ¶ 9.) | Admitted. |
| **DOSIO'S ADMINISTRATIVE APPEALS** <br><br> 14. Since being housed at NKSP in 2015, inmate Dosio only filed two healthcare appeals: NKSP-HC-18001079 and NKSP-HC-19000134. (Id. at ¶ 11; Ex. A.) | Admitted. |
| 15. Log No. NKSP-HC-18001079 was received by the institutional level on August 20, 2018 and a decision was rendered on October 19, 2018. On November 1, 2018, that appeal was received by Headquarters and Headquarters rendered a decision of "no intervention" on January 14, 2019. In that appeal, inmate Dosio raised three issues: 1) wanting to get a referral back to ophthalmology; 2) complaint that medical staff intentionally allowed him to lose use of | Admitted. |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| his right eye; and 3) requested an undisclosed amount of money from staff for failing to take corrective action on his eye. (Id. at ¶ 12; Ex. B.) | |
| 16. In Log No. NKSP-HC-18001079, Dosio makes vague allegations that medical staff was deliberately indifferent to his "serious medical needs regarding the pain & suffering that I have been experiencing in my right eye & the lost [sic] of my eye ..." He states that he has been experiencing pain from 2016 to the present. (Id. at ¶ 13; Ex. B.) | Denied. Plaintiff denies that his allegations are vague. Plaintiff also denies that this recitation of the allegations in Log No. NKSP-HC-18001079 is complete. However, Plaintiff admits the quoted sentence fragment is correctly stated. (Def. MSJ, Ex. B, ECF #35-2 at p.11, 13)[6] |
| 17. The only other healthcare appeal inmate Dosio has filed is Log No. NKSP-HC19000134. This appeal was received by the institutional level on March 6, 2019 and a decision was rendered on April 26, 2019. It was not appealed up to Headquarters level. In this appeal, Dosio makes no mention on E. Fernandez; he complains that he wanted a second opinion regarding his eye issue, which he was refused. (Id. at ¶ 14; Ex. C.) | Admitted. |
| 18. Beyond Log Nos. NKSP-HC-18001079 and NKSP-HC-19000134, inmate Dosio did | Admitted. |

---

[6] Neither Plaintiff's position that his allegations are not vague, nor his denial that Defendant has set forth a complete recitation of the allegations create a genuine issue of material fact relevant to the outcome of the motion for summary judgment.

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| not submit any other healthcare appeals or grievances to HCAABs, between 2016 and May 16, 2019, the date he filed his initial complaint, while he was housed at North Kern State Prison. (Id. at ¶¶ 10-11; Ex. A.) | |
| 19. Neither of Dosio's healthcare appeals involve allegations that LVN E. Fernandez specifically delayed in providing adequate medical treatment between the period of October 26- November 1, 2016, the time period at issue in Dosio's operative complaint. (Id. at ¶¶ 11-15; Exs. B-C; see also SAC passim.) | Denied. Plaintiff's healthcare appeal Log No. NKSP-HC18001079 does involve allegations that Defendant LVN E. Fernandez delayed in providing adequate medical treatment between the period of October 26 – November 1, 2016, the time period at issue in Plaintiff's operative complaint. Specifically, Plaintiff's grievance describes "NKSP Medical Staff… being deliberate[ly] indifferent to [his] serious medical needs regarding… the loss of [his] eye… from 2016 to the present." He then describes with particularity Defendant Fernandez's deliberately indifferent responses to Plaintiff's multiple pleas for medical attention to his pus-oozing eye, and concludes that his grievance sought recourse from "E. Franandez [sic] [and others]… for failing to take corrective action to prevent me from losing my eye & experiencing all the pain & suffering I had to endure…" (Def. MSJ, Ex. |

| DEFENDANT'S UNDISPUTED FACT | PLAINTIFF'S RESPONSE |
|---|---|
| | B, ECF #35-2 at p.11, 13)[7] |

### C.      Defendant's Position

Defendant argues that there is no genuine dispute as to any material fact that Plaintiff failed to exhaust his available administrative remedies regarding the allegations in this lawsuit. Defendant's evidence includes Plaintiff's Complaint and Second Amended Complaint, (ECF Nos. 1, 18), Declaration of R. Hart (Chief of the Health Care Correspondence and Appeals Branch, CDCR) and its exhibits, (ECF No. 35-2), and the Court's record.  The evidence shows the following:

CDCR had an available healthcare grievance process at NKSP and Plaintiff utilized the process by filing only two inmate healthcare appeals while being housed at NKSP since 2015. (Decl. of R. Hart, ECF No. 35-2 at ¶¶ 4, 11 & Exh. A.)  Neither of Plaintiff's grievances were submitted timely or specifically addressed Defendant's conduct from October 27, 2016 through October 30, 2016, which is the subject of the complaint.  (Id. at ¶¶ 10-15; Exhs. A, B, & C.)  The Second Amended Complaint raises only one cause of action, an Eighth Amendment claim against Defendant Fernandez alleging that she "arbitrarily, capriciously and with deliberate indifference denied Plaintiff Constitutionally mandated medical treatment by failing to send Plaintiff to an outside hospital or contact a doctor on staff to take corrective action at any point from October 27, 2016, through October 30, 2016."  (SAC, ECF No. 18 at 7, 10.)

Under the applicable regulations, Plaintiff was required to submit an administrative appeal within 30 days of the incident, or knowing of the incident. See Cal. Code Regs. tit. 15, § 3999.227(b). Based on Plaintiff's own allegations in the SAC, he was aware of the injury immediately, (Second Amended Complaint), yet Plaintiff did not file any appeals within 30 days of the alleged incident, (Id. ECF No. 18 at ¶¶ 10-15; Exhs. A, B, & C).  In fact, the only appeals

---

[7] Plaintiff's position that his appeal involves allegations that Defendant Fernandez delayed in providing adequate medical treatment between the period of October 26- November 1, 2016 does not create a genuine issue of material fact relevant to the outcome of the motion for summary judgment.

he filed regarding his eye generally were in 2018 and 2019, respectively—years after the alleged constitutional violations occurred.  (Id. at ¶¶ 7-9, 11-13; Exhs. A & B.)

Plaintiff's Grievance No. NKSP-HC-18001079 was not submitted until August 19, 2018, which was almost two years after the complained-of conduct occurred, and prison officials did not reject this appeal as time-barred, (Id. at ¶ 12; Exh. B), which Defendant contends was because the appeal does not concern the 2016 conduct at issue.  Defendant contends that the procedural defects – that the grievance was not timely submitted and does not concern the 2016 conduct at issue -- were not evident when prison officials made a decision on the merits of the grievance. Defendant compares Plaintiff's Grievance No. NKSP-HC-18001079 to the inmate's grievance in Arpaio, 557 F.3d at 1121, where the grievance was insufficient to exhaust because it did not provide enough information to prison officials to take appropriate responsive measures. Defendant also argues that Plaintiff's appeal is similar to the appeals in Kimbro v. Miranda, 735 F. App'x 275, 279 (9th Cir. 2018) which did not exhaust remedies for denial of medication on September 9, 2008, because the September 9, 2008 date was not mentioned in the grievances.

Defendant's evidence also shows that Plaintiff's other Grievance No. NKSP-HC-19000134 was submitted even later than his first grievance, on March 5, 2019, and it was only submitted to the institutional level and never appealed to the headquarters level as required. See Brown, 422 F.3d at 937 (inmate required to exhaust every level of appeal available to him). (SAC, ECF No. 18 at ¶¶ 11, 14; Exhs. A & C.)  Also, Grievance No. NKSP-HC-19000134 only concerned Plaintiff's request for a second opinion about his vision and made no mention of Defendant Fernandez or the conduct addressed in the complaint.  (Id. at ¶ 14; Exh. C.)

Defendant argues that both of the appeals [8] are defective, and that the rule in Reyes [9] should not be upheld for either of Plaintiff's appeals because the appeals did not put prison officials on notice of the merits of the lawsuit.  According to Defendant, Plaintiff's appeals generally grieved

---

[8] Plaintiff's grievances are also referred to as appeals.

[9] The Ninth Circuit held in Reyes, 810 F.3d. at 657, that when prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the exhaustion requirement is satisfied.

the pain Plaintiff suffered, but they were silent about the gravamen of the complaint, that "Defendant E. Fernandez responded to Plaintiff's many complaints from October 27, 2016, through October 29, 2016, concerning the pain and suffering he was experiencing with deliberate indifference which cause Plaintiff to [lose] sight in his right eye." (Second Amended Complaint (SAC), ECF No. 18 at 10.)

### D. **Defendant's Burden**

The Court finds that Defendant has carried her initial burden to prove that there was an available administrative remedy and that Plaintiff failed to exhaust that remedy for his claims against Defendant Fernandez. Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust the available remedies for his claims against Defendant, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

### E. **Plaintiff's Position**

In opposition to Defendant's motion, Plaintiff argues that he exhausted his administrative remedies for his claims in this case with Grievance Number 18001079, because he submitted the grievance for Headquarters Level Response and was provided a response on January 14, 2019, which advised him that "[t]his decision exhausts your administrative remedies." (Def. MSJ, Exh. B, ECF No. 35-2 at 8-10.) Plaintiff's evidence includes Defendant's motion for summary judgment and its exhibits, (ECF No. 35), the Second Amended Complaint, (ECF No. 18), and the Court's record. Plaintiff provides evidence of the following:

Grievance No. 18001079 was accepted at the Institutional Level on August 20, 2018, where it addressed Plaintiff's grievance on the merits and did not mention any procedural defects. (Def. MSJ, Ex. B, ECF #35-2 at p.15, 16) On October 28, 2018, Plaintiff submitted Grievance No. 18001079 for Headquarters' Level review, and on January 14, 2019, Plaintiff was provided with the Headquarters' Level Response, which again addressed the issues in Plaintiff's grievance on the merits and did not mention any procedural defects. (Def. MSJ, Ex. B, ECF #35-2 at p.8-10.) At the conclusion of the Headquarters' Level Response to Grievance No. 18001079, NKSP advised Plaintiff that "[t]his decision exhausts your administrative remedies." (Id. at 10.)

### F.   Discussion

1.   **Plaintiff's Claims**.  There is no dispute that this case now proceeds only with Plaintiff's claims in the Second Amended Complaint against defendant LVN Elma Fernandez for failure to provide adequate medical care in violation of the Eighth Amendment. (ECF No. 20.)

2.   **Plaintiff's Grievances**

The parties agree that Plaintiff filed only two grievances since his incarceration at North Kern State Prison in 2015, NKSP-HC-18001079 and NKSP-HC-19000134, (Decl. of R. Hart, ECF No. 35-2 at ¶¶ 10, 11; Pltf's Responsive Pleading, ECF No. 38-1 at 4 ¶ 14, 18), and that Grievance no. NKSP-HC-19000134 was not exhausted to the final level of review, (Id. at ¶ 14; Ex. C).   Therefore, Grievance no. NKSP-HC-18001079 is the only grievance at issue in Defendant's motion for summary judgment because it is the only grievance for which Plaintiff completed all levels of review.

Grievance No. NKSP-HC-18001079 was filed on August 19, 2018 and involved allegations that medical staff, including Defendant LVN E. Fernandez, delayed in providing adequate medical treatment for Plaintiff's "serious medical needs regarding the pain & suffering that I have been experiencing in my right eye & the lost [*sic*] of my eye . . ."  (Id., ECF No. 35-2 at ¶ 13; Ex. B.)  Plaintiff states in Grievance No. 18001079 that he has been experiencing pain from 2016 to the present.  (Id.)

**Healthcare Grievance No. NKSP HC 18001079, filed on August 19, 2018**

This Appeal will address the issue of NKSP Medical Staff & Sacramento being deliberate indifferent to my serious medical needs regarding the pain and suffering that I have been experiencing in my right eye and the lost of my eye which causes me nausea, humiliation, mental and emotional pain & suffering, & how NKSP medical staff & upper medical staff has interfered/delayed & denied me medical treatment to repair my eye & relieve pain & sufferin that I have been experiencing from 2016 to the present. I put in several CDC-7362 stating I can't see out of my right eye, I was in pain, & my vision was blurry I was sent to the TTA, two days after the Dr. & CP&S A. Shitiu referred me to see the Optometry they stated I couldn't see far away I had black spots in my vision & it was black spots & blurry vision I was sent to Dr. Yaplee he took pictures & X-Rays of my eye which showed the full Retina thickness MAP, stating he couldn't help me I was then sent to see Dr. Tawansey who treated me with 100 mg of Docycline & stated to return in 2-Weeks I then returned for injections for 5 to 6 months. After the fifth or sixth injection I caught an infection & this is when I became in extreme

pain & my eye started to oozz pus I went to FAC-A Clinic & saw LVN E. Franandez & she said there was nothing she could do & to put in a CDC7363 the next day I went back she said there was no Dr. on the weekend & I had to leave I told her I wasn't going anywhere & to call who she had to call the RN on call at the TTA told her to bring me over there immediately during this time my vision was completely black after being in a holding cage for an hr, a Dr. came & examine my eye for 10-seconds & said it was dead He called an ambulance & I was taking to a Hospital the doctor stated he wasn't touching my eye they kept me there over night still in pain with pus oozing out my eye that morning I was sent to see Dr. Twansey he gave me four injections in the eye I saw him two days later he said I was blind in my right eye & he needed to do surgery on my right eye he took the infection out of my eye from that point I was still in pain I went to see the Dr. again & told him I wasn't able to see or focus & had scar tissue in my eye, after having surgery & all exchange on my eye the X-Rays showed my eye was black The doctor allow nature to take its place in pain

I request an undisclosed amount of money from defendants E. Franandez, V. Dacherman, O. Beregovskaya, E. Flores, D. gines, A. Kalera, N. Igbincea, A. Shittu, T. Kubicki, Institution/Headquarters Utilization Management Committee members, Treatment Team assigned to me & all defendant Does in Compensatory Damages for failing to take corrective action to prevent me from losing my eye & experiencing all the pain & suffering that I had to endure, because someone was in charge of making sure that I receive proper medical treatment failed terribly & allowed nature to take its place & allowed me to lose my eye, which was preventable (2) Undisclose amount of money from the above defendants in punitive damages for the same thing & intentionally violating my Eighth Amendment Constitutional Rights under Farmer Vs. Brennan 511 U.S. 820-27, CCR. Title 15, DOM, & Government Code. I am still in pain from my eye & would like to be referred back to Dr. Twansey regarding my eye issues. (3) I would also like for the receiver to have this matter investigated, because I am not the only inmate that defendants allowed to intentionally lose their eye.[10]

(ECF No. 35-2 at 11, 13; ECF No. 38-2 at 1-3.)

In response to the grievance prison officials at California Correctional Health Care Services (CCHCS) identified the issue of the grievance as "[m]edical staff intentionally allowed you to lose the use of your right eye" with a request by Plaintiff for "[a]n undisclosed amount of money from defendants and all listed staff and groups for failing to take corrective action to prevent you from losing your eye and pain and suffering, [and f]or the Receiver to have this matter investigated because you are not the only inmate that defendants allowed to intentionally lose their eye."  The grievance was received at the Institutional Level on August 20, 2018 and closed on October 19, 2018.  (ECF No. 35-2 at 6.)  Subsequently, the grievance was received at the Headquarters' Level on November 1, 2018 and closed on January 14, 2019.  (Id.)

_____

[10] Spelling and grammatical errors in original.

At the Headquarters' Level, officials responded:

Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate:

• You are enrolled in the Chronic Care Program, where your medical conditions and medication needs are closely monitored. Progress notes indicate there is a plan of care in place for retina disorder and retinal detachment, and the primary care provider has discussed the plan of care with you. The primary care provider completed assessments, noted review of your history, current symptoms, and laboratory/imaging results, and developed a plan of care, including optometry and ophthalmology evaluation, consultation with a retinal specialist, surgical interventions, medication, and transitional bifocals.

o Ophthalmology consultation was scheduled for January 4, 2019; however, due to provider illness the consultation was rescheduled. If the appointment does not take place within the time frames outlined in the Inmate Medical Services Policies and Procedures, Volume 4, Chapter 8, Outpatient Specialty Services, you may utilize approved processes to access health care services to discuss your concern with health care staff.

• There is no indication your care has not been provided pursuant to the rules and regulations governing the management and delivery of medically or clinically necessary health care services. Patients shall be accorded impartial (equal, unbiased) access to treatment or accommodations that are determined to be medically or clinically indicated, based on the patient's individual presentation, history, and exam findings, in accordance with appropriate policies and procedures. Treatment determined to be medically or clinically indicated for another patient may not be determined to be appropriate for you; this does not constitute a violation of your right to impartial access to medically or clinically necessary health care.

• Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you are advised to utilize approved processes to access health care services in accordance with California Correctional Health Care Services policy.

• Monetary compensation is outside the jurisdiction of the health care grievance process.

……..

This decision exhausts your administrative remedies.

(ECF No. 35-2 at 9-10.)

Plaintiff argues that his Grievance No. 18001079 is like the prisoner's appeal in <u>Reyes</u> and therefore exhausted his remedies.  In <u>Reyes</u>, the court held that a prisoner exhausts "such administrative remedies as are available," 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a

decision on the merits of the grievance at each available step of the administrative process. <u>Reyes</u>, 810 F.3d at 658.

> When prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed. <u>See</u> <u>Nussle</u>, 534 U.S. at 525, 122 S.Ct. 983. Dismissing the inmate's claim for failure to exhaust under these circumstances does not advance the statutory goal of avoiding unnecessary interference in prison administration. <u>See</u> <u>Woodford</u>, 548 U.S. at 93, 126 S.Ct. 2378. Rather, it prevents the courts from considering a claim that has already been fully vetted within the prison system.
>
> Declining to enforce procedural rules when prison officials fail to do so also serves the state's interests in "deciding when to waive or enforce its own rules." <u>Reed–Bey</u>, 603 F.3d at 325. It "takes into account the likelihood that prison officials will benefit if given discretion to decide, for reasons such as fairness or inmate morale or the need to resolve a recurring issue, that ruling on the merits is better for the institution and an inmate who has attempted to exhaust available prison remedies." <u>Hammett</u>, 681 F.3d at 948.
>
> Accordingly, we hold that a prisoner exhausts "such administrative remedies as are available," 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process.

<u>Reyes</u>, 810 F.3d at 658.

The parties agree that Grievance No. 18001079 was not submitted timely pursuant to the requirements of Cal. Code Regs. tit. 15, § 3999.227(b), which states, "The grievant must submit the form to the HCGO [Health Care Grievance Office] where the grievant is housed *within 30 calendar days* of: (1) the action or decision being grieved, or (2) initial knowledge of the action or decision being grieved." Cal. Code Regs. tit. 15, § 3999.227(b) (emphasis added).  Grievance No. 18001079 was filed on August 19, 2018, which is more than 30 calendar days after Defendant Fernandez's conduct in 2016 being grieved.

Defendant's contention that the procedural deficiencies in Grievance No. 18001079 were not evident to prison officials reviewing the grievance is not supported by evidence.  There is no evidence that prison officials were not aware that Plaintiff was complaining in the grievance about his medical care "from 2016 to the present," as Plaintiff stated in the grievance, or that officials failed to understand that they had not enforced the statutory 30-day deadline to file a

grievance concerning conduct dating back to 2016.  In fact, the Institutional Level Response advises Plaintiff that "[y]our health care grievance package and health record and *all pertinent departmental policies and procedures* were reviewed." (emphasis added.)  (Decl. of R. Hart, ECF No. 35-2 at 15.)  At the bottom of the first page of the response, Note 1 indicates that '[t]he institutional level review is based on *records available as of the date the Institutional Level Response is signed by the reviewing authority*."  (Id.) (emphasis added.) This evidence shows that prison officials were aware of the statutory requirements for filing grievances and reviewed all records pertinent to Plaintiff's eye care while he was at NKSP, back to the date Plaintiff first reported issues with his right eye.

Defendant argues that Plaintiff's Grievance No. 18001079 is like the grievance in Kimbro v. Miranda which failed to exhaust Kimbro's remedies for denial of medication on September 9, 2008, at issue in the complaint, because the September 9, 2008 date was not mentioned in the grievance.  Kimbro, 735 F. App'x at 279.   In Kimbro, the court found that a grievance did not exhaust remedies, although Kimbro advanced a "continuing violation" theory to argue that other grievances alleging denials of medication were sufficient to exhaust Kimbro's September 9, 2008 denial of medication.  The Court found that Kimbro's grievances did not discuss the September 9, 2008, denial and thus, they were insufficient to put prison officials on notice of the denial of medication on September 9, 2008, and did not allow officials "to take appropriate responsive measures" to correct the problem.

The decision in Kimbro is an unpublished disposition and is not precedent except under limited circumstances not applicable here.[11]  Nevertheless, the Court notes that Kimbro's facts are distinguishable from those in the instant case.   In Kimbro, the plaintiff filed more than one grievance complaining about denial of medication.  Based on a failure to exhaust, the district court dismissed Kimbro's claim against defendant Clark for denial of medication on September

---

[11] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.  Kimbro, 735 F. App'x at 277.  Unpublished dispositions and orders of the Ninth Circuit Court of Appeals are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.  CTA9 Rule 36-3.

9, 2008.  The Ninth Circuit affirmed the district court's decision because Kimbro's grievances did not discuss the September 9, 2008 denial of medication and therefore were insufficient to put prison officials on notice of the denial of medication on September 9, 2008, thus did not allow officials "to take appropriate responsive measures" to correct the problem.

Conversly, Plaintiff's Grievance No.  18001079 was sufficient to put prison officials on notice.  The grievance discussed at length the history of medical treatment that Plaintiff received for his right eye from 2016 to the present, with factual allegations describing each defendant's personal conduct leading up to the diagnosis that Plaintiff's right eye was blind and his vision could not be restored.  As to Defendant Fernandez's conduct in the days leading up to Plaintiff becoming blind, Plaintiff's allegations in his grievance are specific, and the court finds them sufficient to have placed prison officials on notice of Plaintiff's encounters with Defendant Fernandez which in turn allowed officials to take appropriate responsive measures.  Those measures requested by Plaintiff, at the time Plaintiff filed his grievance in 2018, were compensation for Plaintiff's pain and the damage to his eye because he was not provided adequate medical care, referral back to Dr. Tawansey, and an investigation.  (ECF No. 35-2 at 11, 13; ECF No. 38-2 at 1-3.)

Thus, unlike in Kimbro, the facts in Plaintiff's grievance were sufficient to put officials on notice of the alleged wrong done to him by Defendant Fernandez –a delay in medical treatment -- and allowed officials to take appropriate responsive measures.

In Arpaio, the Court found that the plaintiff, Griffin, did not provide enough information in his grievance to alert the prison of a problem and facilitate its resolution.  Griffin's problem concerned his unsatisfactory bunking situation, specifically the prison staff's alleged disregard of his lower bunk assignments, which allegedly resulted in Griffin falling while trying to access the upper bunk.  However, in his grievance, Griffin did not address his bunk assignment, but rather requested a ladder or "some sort of permanent step."  He continued to appeal the grievance but his appeals did not mention the alleged disregard of his lower bunk assignment, instead continuing to demand better means of access to the top bunk.  The Court found that Griffin's grievances and appeals had not sufficiently informed prison officials of the nature of his

complain,t or facilitated its resolution.   See Arpaio, 557 F.3d at 1121 (internal quotation marks omitted).

In the case at hand, Defendant argues that Plaintiff's Grievance No. 18001079 did not exhaust Plaintiff's remedies regarding Defendant Fernandez's conduct from October 27, 2016, through October 29, 2016, because the grievance did not refer to those dates and only generally grieved his medical treatment, thus failing to put the prison on notice of the merits of the lawsuit. Plaintiff disagrees and argues that his grievance did put the prison on notice of the merits of his lawsuit.

Adequate notice of the problem for which a plaintiff seeks redress only needs the level of detail required by the prison's regulations, and if a grievance is incomplete as to factual specifics in the regulations, it only needs to alert the prison to the wrong.   Sapp, 623 F.3d at 824 (citing Bock, 549 U.S. at 218.  The applicable regulation in this case concerning the process required of Plaintiff by the CDCR is Cal. Code Regs. tit. 15, § 3999.227, which requires:

> (g)     The grievant shall document clearly and coherently all information known and available to him or her regarding the issue.
>
>> (1)     The grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement.
>>
>> (2)     If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance.

Cal. Code Regs. tit. 15, § 3999.227(g).  See Munoz, 2020 WL 5199517, at 19-20 (describing the two-step process).

Here, in Grievance no. NKSP HC 18001079, Plaintiff included the involved staff member's last name, first initial, title or position, and description of the staff member's involvement:

"I went to FAC-A Clinic & saw **LVN E. Franandez** [*sic*] & **she said there was nothing she could do** & to put in a CDC7363 **the next day I went back she said**

> **there was no Dr. on the weekend & I had to leave** I told her I wasn't going
> anywhere & to call who she had to call the RN on call at the TTA told her to bring
> me over there immediately during this time my vision was completely black after
> being in a holding cage for an hr, a Dr. came & examine my eye for 10-seconds
> & said it was dead"

(Decl. of R. Hart, ECF No. 35-2 at 11, 13; Pltf's Oppn, ECF No. 38-2 at 1-3.) (emphasis added.)

Plaintiff's grievance does not specifically state that Defendant Fernandez's conduct occurred from October 27, 2016 through October 30, 2016, which is the subject of the complaint, and instead states that the deliberate indifference to Plaintiff's medical needs for his right eye and the loss of vision in his eye occurred "from 2016 to the present."   (Decl. of R. Hart, ECF No. 35-2 at 11, 13; Pltf's Oppn, ECF No. 38-2 at 1-3.)

> "This Appeal will address the issue of NKSP staff and Sacramento being
> deliberate [*sic*] indifferent to my serious medical needs regarding the pain and
> suffering that I have been experiencing in my right eye and the lost [*sic*] of my
> eye which causes me nausea, humiliation, mental and emotional pain & suffering,
> & how NKSP medical staff & upper medical staff has interfered/delayed & denied
> me medical treatment to repair my eye & relieve pain & sufferin [*sic*] that I have
> been experiencing **from 2016 to the present**"

(Grievance No. NKSP HC 18001079, ECF No. 35-2 at 11, 13; ECF No. 38-2 at 1-3.) (emphasis added.)

California regulations require a CDCR inmate to include in a prison grievance "the date(s)" of any involved staff member's involvement.  But the regulation at issue does not offer clear guidance or any examples of the date(s) or range of dates that must be included.  Cal. Code Regs. tit. 15, § 3999.227(g).  Under <u>Sapp</u>, if the regulation is incomplete as to factual specifics required in the grievance, the grievance only needs to alert the prison to the wrong.  <u>Sapp</u>, 623 F.3d at 824 (citing <u>Bock</u>, 549 U.S. at, 218).

In the case at bar, Dosio's grievance discusses his problems occurring from 2016 to the present.  The Court agrees with Defendant that the dates "from October 27, 2016, through

October 29, 2016" are more specific and descriptive than "from 2016 to the present," but because the regulation at issue is incomplete as to factual specifics, Plaintiff's grievance only needs to alert the prison to the wrong.  Here, Plaintiff's wrong as described in the grievance was that prison officials failed to provide adequate medical treatment to repair his eye and relieve his resultant pain and suffering.  Plaintiff's description in the grievance of the events at issue begins in 2016 when he put in several CDC-7362 stating that he was in pain and his vision was blurry. He continues to describe his visits with Dr. Shitiu (who referred Plaintiff to Optometry), Dr. Yaplee (who took x-rays), and Dr. Tawansey (who treated him with Docycline and injections in his eye), after which he developed a painful infection and sought help from LVN Fernandez, who allegedly denied him medical assistance and told him to come back later.

Based on the foregoing, the Court finds Plaintiff's written account in his grievance to be sufficient to put the prison on adequate notice of the problem for which Plaintiff seeks redress. Here, as in Reyes, prison officials addressed the merits of Plaintiff's grievance instead of enforcing a procedural bar to submit a grievance within 30 days of the conduct at issue, and therefore the state's interests in exhaustion have been served.  Prison officials had the opportunity to address the grievance and correct their own errors and an administrative record has been developed.  Therefore, the Court finds that Plaintiff has exhausted his administrative remedies.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court finds, based on the record before it, that Plaintiff exhausted his available administrative remedies required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) for his claims in this case against Defendant Fernandez arising in 2016.  Accordingly, Defendant's motion for summary judgment, filed on December 14, 2021, should be denied.

Accordingly, **IT IS HEREBY RECOMMENDED that:**

1.    Defendant's motion for summary judgment, filed on December 14, 2021, be denied; and

2.    This case be referred back to the Magistrate Judge to conduct further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen**

**(14) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 24, 2022**                    **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE